Filed 7/18/23  In re J.D. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHELLE S.,<br><br>    Defendant and Appellant. | G062373<br><br>(Super. Ct. No. 20DP0174)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Robert Gerard, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*        \*        \*

Following a hearing, the juvenile court terminated the parental rights of Michelle S. (the mother) regarding J.D. (the child). (See Welf. & Inst. Code, § 366.26.)[1] As to the Indian Child Welfare Act (ICWA), the court found it did not apply, and further found the Orange County Social Services Agency (the Agency) had fulfilled its obligation to do initial ICWA inquiries as to whether the child was of Indian ancestry. The mother appeals. She contends the juvenile court's ICWA findings are in error.

We hold there is substantial evidence to support the juvenile court's finding that ICWA does not apply (i.e., there is no reason for the court to know the child is an Indian child). We further hold the court was not arbitrary and/or capricious when it determined the Agency fulfilled its initial inquiry obligations under ICWA.

Thus, we affirm the order.

I

FACTS AND PROCEDURAL HISTORY

On February 6, 2020, police officers entered a hotel room where they observed methamphetamine within the reach of a four-year-old boy. Police arrested the mother and took the child into protective custody. The Agency filed a juvenile dependency petition.

On February 11, 2020, during a detention hearing, the juvenile court found Christopher D. to be the presumed father of the child. However, Christopher D. later denied being the child's father, which was confirmed through a paternity test. The mother subsequently identified another man as the child's possible father, but that man denied knowing the mother and did not participate in genetic testing.

On July 9, 2020, the juvenile court held a combined jurisdiction and disposition hearing. The court declared the child a dependent, removed him from the

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

mother's custody, and ordered family reunification services.

On May 24, 2021, the juvenile court conducted a 12-month review hearing. The court found the mother had made minimal progress, terminated reunification services, and set a permanency planning hearing. (§ 366.26.)

On January 3, 2023, the juvenile court conducted the permanency planning hearing. (§ 366.26.) The court terminated parental rights, found the child adoptable, and identified adoption as the permanent plan (the court's ICWA findings will be covered in the discussion section of this opinion).

II

DISCUSSION

The mother argues the juvenile court erred by not ensuring the Agency had made adequate inquiries of family members under ICWA. We disagree.

In the remainder of this discussion, we shall: A) identify relevant legal principles; B) summarize the record; and C) analyze the law as applied to the facts.

A. *Relevant Legal Principles*

ICWA is a federal law concerning the removal of Indian children. (25 U.S.C. § 1901 et seq.) "ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.)

Under ICWA, juvenile courts and the child welfare agencies generally have three obligations in juvenile dependency proceedings: (1) initial inquiry, (2) further inquiry, and (3) formal notice. (*In re J.C.* (2022) 77 Cal.App.5th 70, 77–78.)

Under the initial inquiry obligation, the child protective agency is required "to ask 'the child, parents, legal guardian, Indian custodian, extended family members,

3

others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77.) "[T]he inquiry at the first step need not be exhaustive, as the goal is simply to ensure a reasonable inquiry sufficient to safeguard the rights ICWA was designed to protect." [2] (*In re K.H.* (2022) 84 Cal.App.5th 566, 610.)

Under the further inquiry obligation, the juvenile court and the agency are required to make further inquiries if there is a reason to believe an Indian child may be involved in the juvenile dependency proceeding. (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78.) Under the formal notice obligation, the court and the agency are required to give Indian tribes and other parties formal notice of the dependency proceedings once it becomes known, or there is a "reason to believe" an Indian child is involved. (*Ibid.*)

"If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence. The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry . . . ." (§ 224.2, subd. (i)(2).)

Some appellate courts have determined that a "hybrid" substantial evidence/abuse of discretion standard of review should apply when reviewing a juvenile court's rulings under ICWA. (*In re E.C.* (2022) 85 Cal.App.5th 123, 143.) That is, the juvenile court's factual findings are reviewed for substantial evidence, while the court's determination of whether the agency acted with due diligence is reviewed for an abuse of discretion. (*Ibid.*) "'The inquiry is ultimately discretionary because it requires the

_____

[2] The Supreme Court recently upheld ICWA's constitutionality under a variety of constitutional claims. (*Haaland v. Brackeen* (2023) __ U.S. __ [143 S.Ct. 1609].)

4

juvenile court to "engage in a delicate balancing of" various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence.'" (*Ibid*.)

However, these varying concepts are all encompassed within the abuse of discretion standard of review: "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted; *People v. Carmony* (2004) 33 Cal.4th 367, 377 [a decision is irrational or arbitrary if "no reasonable person could agree with it"].)

B.  *The Underlying Record Concerning the ICWA*

On February 11, 2020, the mother initialed and signed a form stating: "I have no Indian ancestry as far as I know." The juvenile court stated: "So at this time court is finding that there is no evidence that [ICWA] applies." In the initial detention report to the juvenile court, the Agency identified the child's Maternal Grandmother.

On March 10, 2020, in a jurisdiction/disposition report, the Agency noted that it had made efforts to also contact the child's Maternal Great-Grandmother and the child's Maternal Great-Grandfather.

On June 2, 2020, in an addendum report, the Agency reported that the child was placed with the child's Maternal Great-Uncle.

On May 24, 2021, in an addendum report, the Agency noted that the child's Maternal Aunt had submitted a packet to obtain a home study for possible placement in Las Vegas, Nevada.

On May 24, 2021, in a hearing on a motion, the juvenile court took notice of the court's earlier ruling that ICWA did not apply to the child.

On February 28, 2022, in an addendum report, the Agency informed the juvenile court that the child had been relocated to the home of his Maternal Second Cousin. In a written order, the court ordered the Agency "to provide new update on interview and inquiry about ICWA including interviews with relatives on both sides of the family."

On October 27, 2022, in an addendum report, the social worker informed the juvenile court that she had contacted/left messages for the following three relatives regarding ICWA: Maternal Grandmother, Maternal Great-Uncle, and Maternal Second Cousin. The social worker also stated she had conducted a telephonic interview with the following three relatives: Maternal Great-Grandmother, Maternal Aunt, and Maternal Great-Aunt. Each of the interviewed relatives denied any Indian heritage. Maternal Aunt stated, "her family's background is European, Italian and Irish."

On January 3, 2023, at the permanency planning hearing, the Agency asked the juvenile court "to make a finding today that ICWA does not apply." Counsel argued: "I think that the Agency has made exhaustive efforts to interview as many family members as possible regarding the potential applicability of ICWA, and to date, there is no indication that ICWA applies in this case." The court asked the other counsel, including the mother's counsel, "do you care to be heard?" Each counsel submitted on the issue.

The juvenile court ruled, "for the reasons articulated by [the Agency's counsel] and based upon the Court's review of the Agency's exhaustive efforts, the Court is going to find that ICWA does not apply to this case. [¶] The Court is also going to respectfully order the Agency that notwithstanding that ruling . . . to continue its obligations of ongoing inquiry insofar as ICWA."

*C. Analysis and Application*

The mother stated she had no Indian ancestry, and the three family members interviewed by the Agency similarly denied any Indian ancestry. The child's Maternal Aunt stated, "her family's background is European, Italian and Irish." Therefore, the juvenile court's finding that ICWA does not apply is supported by substantial evidence (i.e., there is no reason to know the child is an Indian child).

As far as the adequacy of the inquiries, the Agency identified six extended maternal family members in various reports. In October 2022, the Agency reported to the juvenile court that the social worker had attempted to contact five of those relatives, with the exception of the Maternal Great-Grandfather. Two of those six relatives were telephonically interviewed, in addition to a seventh family member, the Maternal Great-Aunt, who also denied any Indian ancestry. Although the court had previously ordered the Agency to contact paternal family members, the presumed father was determined not to be the biological father. Further, the only other man identified as a father told the Agency he did not know the mother, and he asked the Agency to stop contacting him.

Here, we respectfully disagree with the juvenile court's characterization of the Agency's ICWA investigation as "exhaustive." The Agency's social worker did not contact the child's Maternal Great-Grandfather, and the social worker did not document any further contacts with the other identified family members after they failed to respond to the initial telephonic ICWA inquiries.

Nonetheless, we find that the juvenile court was <u>not</u> arbitrary or capricious in its determination that the Agency had reasonably fulfilled its initial notice obligations under ICWA. (See *In re K.H.*, *supra*, 84 Cal.App.5th at p. 610 ["the inquiry at the first step need not be exhaustive, as the goal is simply to ensure a reasonable inquiry"].) Further, the court specifically directed the Agency "to continue its obligations of ongoing inquiry insofar as ICWA." Thus, we affirm the order.

The mother argues the Agency did not contact the child's "paternal uncle, for whom the Agency had contact information as evidenced by having mailed him a placement referral." But that assertion is not supported by the record. The Agency used the phrase "paternal uncle" in a few of its reports, but a review of the record plainly reveals the Agency was referring to a man named Bryan L., who was the maternal great-uncle of the child.[3]

The mother also argues the contacts with the extended family members were made late in the process and "apparently as an afterthought." But the timing of the inquiries is not particularly relevant for the purposes of appellate review, so long as the inquiries were made, and the results were documented. And again, it was within the discretion of the juvenile court to determine whether the Agency's inquiry efforts were reasonable (or not). (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 604 ["so long as the agency conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the agency's efforts are sufficient to satisfy the mandates of ICWA and related California law"].)

---

[3] It is possible that the child's *maternal* great-uncle may be the mother's *paternal* uncle (Bryan L. may be the brother of the mother's father).

## III

## DISPOSITION

The order is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.